UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X
STEPHEN DONNELL,                       :

                           :

            Plaintiff,          :     CASE NO.: _____

                           :

      -against-             :     JURY TRIAL DEMANDED

                           :

PATTERN ENERGY GROUP, INC.,   :
MICHAEL GARLAND, ESBEN PEDERSEN,  :
ALAN BATKIN, LORD JOHN BROWNE,  :
DOUGLAS HALL, PATRICIA NEWSON,  :
MONA SUTPHEN, and RICHARD      :
GOODMAN,                        :

                           :

          Defendants.      :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

## <u>COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934</u>

Plaintiff Stephen Donnell ("Plaintiff"), on behalf of himself, by and through his attorneys, alleges the following upon information and belief, including investigation of counsel and review of publicly available information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal knowledge:

## <u>NATURE OF THE ACTION</u>

1.     This is an action brought by Plaintiff against Pattern Energy Group, Inc. ("Pattern Energy" or the "Company") and the members of the Company's executive officers and board of directors (collectively referred to as the "Board" or the "Individual Defendants" and, together with Pattern Energy, the "Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a) respectively, and United States Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. § 240.14a-9. Plaintiff's claims arise in connection with the proposed acquisition by Canada Pension Plan Investment Board ("CPPIB") and its affiliates (the "Merger").

2.     On November 3, 2019, Pattern Energy entered into an Agreement and Plan of Merger (the "Merger Agreement") with CPPIB, Pacific US Inc. ("Parent", an indirectly wholly owned subsidiary of CPPIB), and Pacific BidCo US Inc. ("Merger Sub", a wholly owned direct subsidiary of Parent).  Pursuant to the Merger Agreement, Merger Sub will be merged with and into Pattern Energy, with Pattern Energy continuing as the surviving entity (the "Proposed Transaction").

3.     Under the terms of the Merger Agreement, and upon consummation of the Merger, holders of the Company's common stock will be entitled to receive $26.75 in cash per share, without interest and less any withholding taxes required by applicable law (the "Merger Consideration").

4.     On December 13, 2019, in order to convince Pattern Energy's public common stockholders to vote in favor of the Proposed Transaction, Defendants authorized the filing of a materially incomplete and misleading Schedule 14A Preliminary Proxy Statement (the "Proxy") with the SEC, in violation of Sections 14(a) and 20(a) of the Exchange Act.

5.     In particular, the Proxy contains materially incomplete and misleading information concerning: (i) financial projections for Pattern Energy prepared by Company management; (ii) the valuation analyses performed by Pattern Energy's financial advisor, Evercore Group L.L.C. ("Evercore"), in support of its fairness opinion; and (iii) whether the standstill agreements signed with potential bidders contain "don't ask, don't waive" ("DADW") clauses and whether those clauses were waived.

6.     The special meeting of the Company's stockholders to vote on the Proposed Transaction is forthcoming, as the Merger is expected to be completed by the second quarter of 2020. It is therefore imperative that the material information that has been omitted from the Proxy

is disclosed prior to the special meeting of Pattern Energy stockholders so Plaintiff can properly exercise his corporate voting rights.

7.      For these reasons, and as set forth in detail herein, Plaintiff asserts claims against Defendants for violations of Sections 14(a) and 20(a) of the Exchange Act and Rule 14a-9. Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to Pattern Energy's public common stockholders sufficiently in advance of the special meeting of the Company's stockholders or, in the event the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

7.      This Court has jurisdiction over all claims asserted herein pursuant to Section 27 of the 1934 Act because the claims asserted herein arise under Sections 14(a) and 20(a) of the 1934 Act and Rule 14a-9.

8.      Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over each Defendant by this Court permissible under the traditional notions of fair play and substantial justice.  "Where a federal statute such as Section 27 of the [Exchange] Act confers nationwide service of process, the question becomes whether the party has sufficient contacts with the United States, not any particular state."  *Sec. Inv'r Prot. Corp. v. Vigman*, 764 F.2d 1309, 1315 (9th Cir. 1985).  "[S]o long as a defendant has minimum contacts with the United States, Section 27 of the Act confers personal jurisdiction over the defendant in any federal district court."  *Id.* at 1316.

9.      Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as 28 U.S.C. § 1391, because Defendants are found or are inhabitants or transact business in this District. Indeed, Pattern Energy's common shares trade on the Nasdaq, which is also headquartered in this District. *See, e.g., United States v. Svoboda*, 347 F.3d 471, 484 n.13 (2d Cir. 2003) (collecting cases).

## PARTIES

10.     Plaintiff is, and has been continuously throughout all times relevant hereto, the holder of Pattern Energy common shares.

11.     Defendant Pattern Energy Group, Inc. is a Delaware corporation that maintains its principal place of business at 1088 Sansome Street, San Francisco, California 94111.  Pattern Energy's common shares are traded on the Nasdaq under the ticker symbol "PEGI."

12.     Defendant Michael Garland is, and has been at all relevant times, the Company's Chief Executive Officer.

13.     Defendant Esben Pedersen is, and has been at all relevant times, the Company's Chief Financial Officer.

14.     Defendant Alan Batkin is, and has been at all relevant times, the Chairman of the Board of the Company.

15.     Defendant Lord John Browne is, and has been at all relevant times, a director of the Company.

16.     Defendant Douglas Hall is, and has been at all relevant times, a director of the Company.

17.     Defendant Patricia Newson is, and has been at all relevant times, a director of the Company.

18.     Defendant Mona Sutphen is, and has been at all relevant times, a director of the Company.

19.     Defendant Richard Goodman is, and has been at all relevant times, a director of the Company.

20.     The defendants identified in paragraphs 12 through 19 are collectively referred to herein as the "Board" or the "Individual Defendants," and together with Pattern Energy, the "Defendants."

## SUBSTANTIVE ALLEGATIONS

**Background of the Company and the Proposed Transaction**

21.     Pattern Energy is a vertically integrated renewable energy company, which business consists of (i) a portfolio of renewable energy power projects; and (ii) a development investment segment, which principally consists 29% ownership interest in Pattern Energy Group 2 LP, an upstream development platform.

22.     CPPIB is a Canadian Crown corporation established by way of the 1997 Canada Pension Plan Investment Board Act to oversee and invest the funds contributed to and held by the Canada Pension Plan. CPPIB is one of the world's largest sovereign wealth funds and one of the world's largest investors in private equity, having invested over $28.1 billion between 2010 and 2014 alone. As of September 30, 2019, the CPP Investment Board manages over C$409 billion in investment assets for the Canada Pension Plan on behalf of 20 million Canadians.

23.     On November 4, 2019, Pattern Energy and CPPIB issued a joint press release announcing the Proposed Transaction, stated in relevant part:

**Pattern Energy Enters Agreement to be Acquired by Canada Pension Plan Investment Board**

*Pattern Energy Shareholders to Receive $26.75 per Share in Cash;*

*Transaction Enterprise Value of Approximately $6.1 Billion*

*Canada Pension Plan Investment Board and Riverstone Holdings to Combine Pattern Energy and Pattern Energy Development into an Integrated Renewable Energy Company*

*Transaction Expected to Close by the Second Quarter of 2020*

SAN FRANCISCO and TORONTO and NEW YORK, Nov. 4, 2019 /PRNewswire/ -- Pattern Energy Group Inc. (Nasdaq and TSX: PEGI) ("Pattern Energy" or "the Company") and Canada Pension Plan Investment Board ("CPPIB") today announced they have entered into a definitive agreement, pursuant to which CPPIB will acquire Pattern Energy in an all-cash transaction for $26.75 per share, implying an enterprise value of approximately $6.1 billion, including net debt.

CPPIB and Riverstone Holdings LLC ("Riverstone") have concurrently entered into an agreement pursuant to which, at or following the completion of the proposed acquisition of Pattern Energy by CPPIB, CPPIB and Riverstone will combine Pattern Energy and Pattern Energy Group Holdings 2 LP ("Pattern Energy Development") under common ownership, bringing together the operating assets of Pattern Energy with the world class development projects and capabilities of Pattern Energy Development.

Under the terms of the merger agreement, Pattern Energy shareholders will receive $26.75 in cash consideration for each share of Pattern Energy, representing a premium of approximately 14.8% to Pattern Energy's closing share price on August 9, 2019, the last trading day prior to market rumors regarding a potential acquisition of the Company. The consideration also represents a 15.1% premium to the 30-day volume weighted average price prior to that date.

The Pattern Energy management team, led by Mike Garland, will lead the combined enterprise.

"This agreement with CPPIB and Riverstone provides certain and significant value for Pattern Energy shareholders with an all cash transaction at a very attractive stock price," said Mike Garland, CEO of Pattern Energy. "Over the years, Pattern Energy has been able to provide shareholders with a consistent dividend and now our shareholders can realize the value embedded in the Company. We believe the proposed transaction reflects the strength of the platform we have built."

"In reaching this transaction, the Pattern Energy Board of Directors undertook a robust process that we believe culminated in a transaction that delivers value to shareholders," said Alan Batkin, Chairman of the Pattern

Energy Board of Directors. "As part of this process, the Board formed a special committee, composed of independent directors that directed the process at all times, and retained independent legal and financial advisors to assist our review of the transaction and provide a fairness opinion. The special committee reviewed multiple bids as part of a thorough process that involved multiple parties and evaluated the transaction against the Company's standalone prospects, performance and outlook relative to historic trading multiples and yields. Based on this review and in light of the transaction structure, the special committee unanimously determined that this transaction is in the best interest of the Company's shareholders and recommended it to the full Pattern Energy Board, which also determined that this transaction is advisable and in the best interests of the Company's shareholders. The transaction delivers significant, immediate and certain value to the Company's shareholders."

"Pattern Energy is one of the most experienced renewables developers in North America and Japan with a high-quality, diversified portfolio of contracted operating assets, aligning well with CPPIB's renewable energy investment strategy and the increasing global demand for low-carbon energy," said Bruce Hogg, Managing Director, Head of Power and Renewables, CPPIB. "The Pattern Energy management team has a proven track record of identifying and executing development strategies with differentiated competitive advantages. We look forward to working with Pattern Energy and Riverstone to grow the company."

"We have long been believers in Pattern Energy and have had a successful partnership with the Company since we first invested in it more than 10 years ago," said Chris Hunt and Alfredo Marti, Partners at Riverstone. "We have worked closely with Mike and the Pattern Energy team to grow the Company from a development startup into a multinational operator and supplier of low cost, renewably sourced energy. We are confident the team will continue to develop world-class wind and solar assets, which will be an important part of our transition to cleaner forms of power generation. We look forward to continuing to support them in driving the Company's next phase of development."

**Transaction Details**

The transaction is expected to close by the second quarter of 2020, subject to Pattern Energy shareholder approval, receipt of the required regulatory approvals, and other customary closing conditions. The Pattern Energy transaction is not contingent upon the completion of the Pattern Energy Development transaction.

Upon the completion of the transaction, Pattern Energy will become a privately held company and shares of Pattern Energy's common stock will

no longer be listed on any public market. Pattern Energy will continue paying its quarterly dividend through the transaction close.

**Advisors**

Evercore and Goldman, Sachs & Co. LLC are acting as independent financial advisors to Pattern Energy's special committee, and Paul, Weiss, Rifkind, Wharton & Garrison LLP is serving as independent legal counsel to the special committee.

**The Proxy Omits Material Information**

24.     On December 13, 2019, Defendants filed a materially incomplete and misleading Proxy with the SEC.  The Individual Defendants were obligated to carefully review the Proxy before it was filed with the SEC and disseminated to the Company's stockholders to ensure that it did not contain any material misrepresentations or omissions.  However, the Proxy misrepresents or omits material information that is necessary for the Company's stockholders to make an informed voting decision in connection with the Proposed Transaction.

25.     First, the Proxy is materially misleading by stating forecasts through 2027 were created by management and utilized in the financial analyses—yet, shockingly, those projections are not disclosed in the Forecasts section of the Proxy. This is a blatant omission of crucial information about the intrinsic value of the Company and its financial prospects, and so this information must be disclosed prior to the looming shareholder vote.

26.     The Proxy falsely states that financial projections through year 2027 were provided in the Forecasts. Specifically, the Proxy on page 65, states:

> Evercore performed a discounted cash flow analysis of Pattern to calculate the estimated present value of shares of Company Common Stock by discounting back to present value (1) the standalone, levered, after-tax free cash flows to the equity of Pattern (corporate cash flows, excluding Pattern Development) plus (2) distributions from Pattern Development. Pattern Development distributions (net of contributions and preferred interest) **for 2019 to 2027 were provided in the Forecasts**. (emphasis added)

However, the Forecasts section of the Proxy only provides management projections through the year 2023. Proxy at 69. The omission of multiple years of management projections rendered the Forecasts section of the Proxy misleadingly incomplete, and the statement that those years were provided is a lie. Accordingly, complete projections for the Company must be disclosed.

27.    If a company chooses to disclose projections, it obligates itself to do so in a complete and accurate manner, and it may not cherry-pick certain metrics to disclose while withholding other readily available sets of projections from stockholders. *See Smith v. Robbins & Myers*, 969 F. Supp. 2d 850, 874 (S.D. Ohio 2013) ("[I]f a Proxy discloses valuation information, it must be complete and accurate."); *Brown v. Brewer*, 2010 U.S. Dist. LEXIS 60863, at *69-71 (C.D. Cal. June 17, 2010) (same); *see also Azar v. Blount Int'l, Inc.*, No. 3:16-cv-483-SI, 2017 U.S. Dist. LEXIS 39493, at *16 (D. Or. Mar. 20, 2017) ("The established case law shows the importance (and, hence, materiality) of financial projections to shareholders' decision-making."). As the Sixth Circuit explained: "with regard to future events, uncertain figures, and other so-called soft information, a company may choose silence or speech elaborated by the factual basis as then known—but it may not choose half-truths." *Helwig v. Vencor, Inc.*, 251 F.3d 540, 560-61 (6th Cir. 2001).

28.    Second, the Proxy fails to disclose crucial information concerning the summary of Evercore's financial analyses, used in creating its fairness opinion.

29.    With respect to Evercore's *Selected Public Company Trading Analysis*, the Proxy fails to disclose: (i) the individual multiples observed for the 2020E CAFD for each company; (ii) the basis to apply a dividend yield of 7.25% to 6.25%; and (iii) the individual dividend yield for each company's 2020E EBITDA and the  multiples observed. Information explaining the key inputs and assumptions utilized by a financial advisor is material to shareholders, so that they may

judge for themselves if such calculations were appropriate. *See, e.g. In re Pure Res., Inc. S'holders Litig.*, 808 A.2d 421, 449-450 (Del. Ch. 2002) (emphasizing that "stockholders are entitled to a fair summary of the substantive work performed by the investment bankers upon whose advice the recommendations of their board as to how to vote on a merger or tender rely" and that "[t]he real informative value of the banker's work is not in its bottom-line conclusion, but in the valuation analysis that buttress that result.").

30.     With respect to Evercore's *Selected Transaction Analysis*, the Proxy fails to disclose the individual multiples observed for each transaction. A fair summary of a comparable companies or transactions analysis requires the disclosure of the identity of, and individual multiple for, each company or transaction used. Merely providing the mean value of the multiples that a banker applied without any further information is insufficient, as shareholders are unable to assess whether the banker applied appropriate multiples, or, instead, applied unreasonably low multiples in order to present the Merger Consideration in the most favorable light. Accordingly, the omission of this material information renders the summary of this analysis provided in the Proxy misleading.

31.     With respect to Evercore's *Discounted Cash Flow Analysis* for Pattern Energy, the Proxy is materially misleading and incomplete because it fails to disclose: (i) the standalone, levered, after-tax free cash flows; (ii) inputs from the management forecasts after the year 2023; (iii) the estimated corporate general and administrative expense, corporate interest expense, asset acquisitions, proceeds and investments in Gulf Repower project, cash proceeds from divestures, refinancing proceeds, cash proceeds from Nigig loan repayment, long-term debt proceeds, long-term debt paydown, changes in revolver insurances and paydown that Pattern was forecasted to generate during Pattern's fiscal years 2019 through 2023; (iv) the terminal values for Pattern; (v)

the assumptions behind applying a perpetuity growth rate of (1.00)% to 1.00%; and (vi) the inputs and assumptions behind applying a discount rate of 7.5% to 9.5% for Pattern (excluding its subsidiary) and 12.5% to 17.5% for its subsidiary.

32.     These key inputs are material to Pattern Energy stockholders, and their omission renders the summaries of Evercore's DCF analyses for CPPIB and Pattern Energy incomplete and misleading.  As one highly-respected law professor explained regarding these crucial inputs, in a DCF analysis a banker takes management's forecasts, and then makes several key choices "each of which can significantly affect the final valuation."  Steven M. Davidoff, *Fairness Opinions*, 55 Am. U.L. Rev. 1557, 1576 (2006).  Such choices include "the appropriate discount rate, and the terminal value…"  Id.  As Professor Davidoff explains:

> There is substantial leeway to determine each of these, and any change can markedly affect the discounted cash flow value.  For example, a change in the discount rate by one percent on a stream of cash flows in the billions of dollars can change the discounted cash flow value by tens if not hundreds of millions of dollars….This issue arises not only with a discounted cash flow analysis, but with each of the other valuation techniques.  This dazzling variability makes it difficult to rely, compare, or analyze the valuations underlying a fairness opinion unless full disclosure is made of the various inputs in the valuation process, the weight assigned for each, and the rationale underlying these choices. The substantial discretion and lack of guidelines and standards also makes the process vulnerable to manipulation to arrive at the "right" answer for fairness.  This raises a further dilemma in light of the conflicted nature of the investment banks who often provide these opinions.

*Id.* at 1577-78 (emphasis added).  Without the above-mentioned information, Pattern Energy stockholders cannot evaluate for themselves the reliability of Evercore's Discounted Cash Flow Analysis for Pattern Energy, make a meaningful determination of whether the implied equity value per share ranges reflect the true value of Pattern Energy or was the result of an unreasonable judgment by Evercore, and make an informed decision regarding whether to vote in favor of the Proposed Transaction.

33.     Third, the Proxy indicates that Pattern Energy and multiple parties entered into customary standstill agreements. At 113, the Proxy states that during the Go-Shop Period, from November 3, 2019 to December 8, 2019, Defendants were "permitted" to "waive, terminate, modify or release" counterparties from their standstill obligations, which indicates the existence of DADW restrictions on the counterparties. Yet, the Proxy never expressly discloses the existence of the DADW clauses. More importantly, the Proxy fails to inform shareholders whether those DADW restrictions were waived.

34.     Accordingly, the express communication of the existence of such provisions is material to Pattern Energy shareholders, as it bears directly on the ability of parties that expressed interest in acquiring the Company to offer them a better deal. The failure to plainly disclose the existence of DADW provisions creates the false impression that any of the parties who signed non-disclosure agreements could have made a superior proposal. If those non-disclosure agreements contained DADW provisions, then those parties could only make a superior proposal by (i) breaching the agreement—since in order to make the superior proposal, they would have to ask for a waiver, either directly or indirectly; or by (ii) being released from the agreement during the Go-Shop Period, which if action was done, is omitted from the Proxy. Any reasonable shareholder would deem the fact that the most likely potential topping bidders in the marketplace may be precluded from making a superior offer to significantly alter the total mix of information. Thus, the omission of this material information renders the descriptions of the non-disclosure agreements the Company entered into in the Background of the Merger section of the Proxy misleading.

35.     In sum, the omission of the above-referenced information renders the Proxy materially incomplete and misleading, in contravention of the Exchange Act.  Absent disclosure of the foregoing material information prior to the upcoming special meeting of the Company's

stockholders, Plaintiff will be unable to make an informed decision regarding whether to vote his shares in favor of the Proposed Transaction, and he is thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## COUNT I

**Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9**

36.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

37.     Section 14(a)(1) of the Exchange Act makes it "unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title."  15 U.S.C. § 78n(a)(1).

38.     Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that proxy communications shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading."  17 C.F.R. § 240.14a-9.

39.     The omission of information from a proxy will violate Section 14(a) and Rule 14a-9 if other SEC regulations specifically require disclosure of the omitted information.

40.     Defendants have issued the Proxy with the intention of soliciting the Company's common  stockholders' support for the Proposed Transaction.  Each of the Individual Defendants

13

reviewed and authorized the dissemination of the Proxy, which fails to provide critical information regarding, amongst other things: (i) financial projections for Pattern Energy that were prepared by Company management; (ii) the valuation analyses performed by Evercore in support of its fairness opinion; (iii) whether the standstill agreements signed with potential bidders contained DADW clauses and if those clauses were waived.

41.     In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading.  Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a).  The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy, but nonetheless failed to obtain and disclose such information to the Company's common stockholders although they could have done so without extraordinary effort.

42.     The Individual Defendants knew or were negligent in not knowing that the Proxy is materially misleading and omits material facts that are necessary to render it not misleading. The Individual Defendants undoubtedly reviewed and relied upon most if not all of the omitted information identified above in connection with their decision to approve and recommend the Proposed Transaction; indeed, the Proxy states that Evercore reviewed and discussed its financial analyses with the Board, and further states that the Board considered the financial analyses provided by Evercore, as well as its fairness opinion and the assumptions made and matters considered in connection therewith.  Further, the Individual Defendants were privy to and had knowledge of the projections for the Company and the details surrounding the process leading up to the signing of the Merger Agreement.  The Individual Defendants knew or were negligent in

not knowing that the material information identified above has been omitted from the Proxy, rendering the sections of the Proxy identified above to be materially incomplete and misleading. Indeed, the Individual Defendants were required to, separately, review Evercore's analyses in connection with their receipt of the fairness opinions, question Evercore as to its derivation of fairness, and be particularly attentive to the procedures followed in preparing the Proxy and review it carefully before it was disseminated, to corroborate that there are no material misstatements or omissions.

43.     The Individual Defendants were, at the very least, negligent in preparing and reviewing the Proxy.  The preparation of a proxy statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence.  The Individual Defendants were negligent in choosing to omit material information from the Proxy or failing to notice the material omissions in the Proxy upon reviewing it, which they were required to do carefully as the Company's directors. Indeed, the Individual Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and preparation and review of the Company's financial projections.

44.     Pattern Energy is also deemed negligent as a result of the Individual Defendants' negligence in preparing and reviewing the Proxy.

45.     The misrepresentations and omissions in the Proxy are material to the Plaintiff, who will be deprived of their right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the special meeting of the Company's stockholders.  Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

**Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

46.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

47.     The Individual Defendants acted as controlling persons of Pattern Energy within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as officers and/or directors of Pattern Energy, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

48.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

49.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same.   The Proxy contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction.  They were thus directly involved in preparing this document.

50.     In addition, as the Proxy sets forth at length, and as described herein, the Individual

Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Proxy purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

51.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

52.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

53.     Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can the Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A.     Preliminarily and/or permanently enjoining Defendants and their counsel, agents, employees, and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Proposed Transaction, unless and until Defendants disclose the material information identified above which has been omitted from the Proxy;

B.     Rescinding, to the extent already implemented, the Merger Agreement or any of the terms thereof, or granting Plaintiff rescissory damages;

C.     Directing the Defendants to account to the Plaintiff for all damages suffered as a

result of their wrongdoing;

      D.      Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

      E.      Granting such other and further equitable relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.


Dated: December 20, 2019

**MONTEVERDE & ASSOCIATES PC**

  */s/ Juan E. Monteverde*

Juan E. Monteverde (JM-8169)
The Empire State Building
350 Fifth Avenue, Suite 4405
New York, NY 10118
Tel: (212) 971-1341
Fax: (212) 202-7880
Email: jmonteverde@monteverdelaw.com

*Attorney for Plaintiff*